**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOANNE CLEIGHTON,          :
                                  :
     **PLAINTIFF**            :
                                    :    **CIVIL ACTION NO. _____**
     **v.**                  :
                                    :    **JURY TRIAL DEMANDED**
ABINGTON MEMORIAL HOSPITAL,  :
                                    :
     **DEFENDANT.**       :

## COMPLAINT

## I.    INTRODUCTION

1.    Joanne Cleighton ("Plaintiff") brings this employment action against Abington Memorial Hospital ("AMH" or "Defendant").  Plaintiff was an exemplary employee of AMH for more than 26 years who was suspended without pay and then terminated immediately following AMH's Compliance Department's receipt of Plaintiff's complaint of insurance fraud by AMH under the Medicare and Medicaid programs.  Plaintiff asserts claims against Defendant arising under Section 3730(h) of the federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), Section 1423(a) of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq.* ("Pa WBL"), and Pennsylvania common law.  She is seeking economic, compensatory, and punitive damages, costs and attorney's fees, and other relief as permitted under federal and state law.

## II.    PARTIES

2.    Plaintiff is an individual and citizen of the Commonwealth of Pennsylvania, residing therein in Roslyn, Pennsylvania.

3.     Defendant is a hospital, duly organized and existing as a corporation under the laws of the Commonwealth of Pennsylvania.

4.     Defendant maintains its principal place of business at 1200 Old York Road in Abington, Pennsylvania, which is in Montgomery County, Pennsylvania.

5.     At all times material hereto, Defendant transacted business within the Eastern District of Pennsylvania and is subject to the personal jurisdiction of this Court.

6.     At all times material hereto, Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment and under the direct control of Defendant and in furtherance of Defendant's business.

7.     At all times material hereto, Defendant has received federal funding in connection with the provision of services under the Medicare and Medicaid programs.

8.     At all times material hereto, Defendant has received funds by or through the Commonwealth of Pennsylvania and/or political subdivision authority including, without limitation, from its participation in Pennsylvania's Medical Assistance program (Medicaid), and as a direct beneficiary of Pennsylvania's allocation from the Master Settlement Agreement with the tobacco industry.

9.     At all times material hereto, Defendant has been an "employer" within the meaning of the laws at issue in this case.

10.     From in or about February, 1988 through on or about March 25, 2014, Plaintiff was an employee of Defendant.

11.     At all times material hereto, Plaintiff was an "employee" within the meaning of the laws at issue in this case.

III.    **JURISDICTION AND VENUE**

12.    The Court has subject matter jurisdiction over Plaintiff's FCA claim pursuant to 28 U.S.C. §1331, 31 U.S.C. § 3730(h) and 31 U.S.C. § 3732.

13.    The Court has supplemental jurisdiction over Plaintiff's Pa WBL and common law claims pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this Court pursuant to 31 U.S.C. § 3732, 31 U.S.C. § 3730(h), and 28 U.S.C. § 1391.

IV.    **STATEMENT OF FACTS**

### *Plaintiff was an excellent employee.*

15.    Defendant hired Plaintiff in or about February, 1988, to work in the Registrar's Office.

16.    Defendant promoted Plaintiff to the position of Registration Supervisor in or about 1990, and then promoted her again in 2004 to the position of Patient Access Manager, which position she held at the time of her suspension and termination in 2014.

17.    From the time of her hire in 1988 up until the date on which she was suspended, Defendant recognized Plaintiff as a serious, hardworking and valuable employee.

18.    Defendant evaluated Plaintiff's performance annually.  Each and every one of Plaintiff's twenty-six annual evaluations was "Performs As Expected" or better.

19.    From February, 1988 until March 6, 2014 (date of her suspension), Plaintiff's disciplinary record was spotless.

20.     In the last position she held, Patient Access Manager, Plaintiff managed about 40 individuals working in patient registration with responsibility for Patient Access functions, including the entry of patient insurance and billing information.

21.     Plaintiff's work as Patient Access Manager was excellent.  Among other things:

      a.     Plaintiff's staff had a registration accuracy rate over 95%;

      b.     Plaintiff's staff productivity was at best practice level;

      c.     Plaintiff's staff employee engagement ranked best in class per Defendant's HR Solutions Team;

      d.     Plaintiff received the Abington Hospital Ambassador Award;

      e.     Plaintiff was asked to serve on the Abington Hospital Ambassador Award Selection Committee;

      f.     Plaintiff served as a Patient Safety Trainer;

      g.     Plaintiff was a Service Excellence Trainer; and

      h.     Plaintiff was selected to serve on the Difficult Discharge Committee.

22.     Defendant recognized that Plaintiff's performance as Patient Access Manager was excellent.

23.     In what was Plaintiff's last performance evaluation, completed in September, 2013, Defendant assigned to Plaintiff a score of 3.66 out of possible 4.0 (3.0 being "Performs Above Expectations" and 4.0 being "AMH Exceptional Performer"). Plaintiff received an individual score of 4 (AMH Exceptional Performer) in the following categories:  Leads With Vision and Purpose; Leads With Personal Accountability; Leads With A Safety/Quality Focus; Leads By Critical Thinking and Innovation; Leads by Integration of Compliance; and Leads By Engaging Staff.  In the three categories for

which she received less than the highest possible score, Defendant assigned Plaintiff a score of 3 (Performs Above Expectation).

### *Plaintiff opposed Defendant's unlawful and fraudulent conduct.*

24.     The Registration/Patient Access staff (which Plaintiff supervised) entered insurance and billing information in connection with, *inter alia,* out-patient laboratory services, including blood tests.

25.     In general, in connection with the performance and billing of blood tests, Registration/Patient Access was to receive a written order from the physician, which included, *inter alia,* information on the patient, the medical diagnosis and insurance. When the Registration/Patient Access staff entered the information for blood work, Defendant's computer system would generate an "Encounter" number.  The doctor's order was then forwarded to the AMH laboratory.  Members of the laboratory staff pulled the Encounter number and entered the Current Procedural Terminology ("CPT") code (the code that corresponds to the ordered lab test for billing) into the computer system, and this information would be used to generate claims for laboratory services for which Defendant would seek reimbursement.

a.     Sometimes, Registration/Patient Access received paperwork from AMH's mobile phlebotomists (part of AMH laboratory staff) for blood that was to be drawn at home for testing.  Registration/Patient Access entered the information and generated an Encounter number for billing purposes, with the understanding that the existence of a written physician order on file for the home-draw would be confirmed.

b.     Sometimes, Registration/Patient Access received from the laboratory staff doctor's orders for routine blood tests on blood specimens for patients

whom Registration/Patient Access determined were insured by an Independence Blue Cross ("IBC")/Keystone managed care plan pursuant to the Medicare Advantage (Part C) program (Keystone 65) or Medicaid (Keystone First).  Under these circumstances, Registration/Patient Access would not generate an Encounter number and, instead, would mark the order with a red sharpie pen indicating the outside laboratory to which the blood specimen was required to be sent in order for the laboratory service to be covered and reimbursable under the Medicare and Medicaid programs.

26.     Defendant often performed, and sought reimbursement for, out-patient laboratory blood tests for patients eligible for services under the Medicare and Medicaid programs.

27.     Medicare is a federal program created by the Social Security Act, as amended, 42 U.S.C. § 301 *et seq.*, which provides health insurance for individuals 65 or older and to certain disabled persons under the age of 65.  It is funded through the United States Department of Health and Human Services, which administers the program through the Centers for Medicare and Medicaid Services ("CMS").

28.     Pennsylvania's Medical Assistance program (Medicaid) provides medical assistance on behalf of families with dependent children and to individuals whose income and resources are insufficient to meet the costs of necessary medical services. It is authorized by Title XIX of the federal Social Security Act,  42 U.S.C. §§ 1396, *et seq.*, and regulations promulgated thereunder, and Pennsylvania's Public Welfare Code, 62 P.S. 101, *et seq.* and regulations promulgated thereunder.

29.     The Medicaid program is jointly funded by the federal government and the Commonwealth of Pennsylvania.

30.     At all times material hereto, Defendant has received federal and Pennsylvania funds through its participation in the Medicare and Medicaid programs.

31.     Each outpatient laboratory test billed by a hospital for services performed pursuant to Medicare and Medicaid must be, *inter alia,* ordered in writing by a treating physician, and be medically necessary in the view of the treating physician for diagnosis or treatment of the patient's condition.

32.     Plaintiff was aware that federal and state laws make it a crime to, *inter alia,* submit fraudulent information on items and services billed in connection with healthcare services.

33.     Plaintiff became aware that Defendant was engaging in conduct that was fraudulent and in violation of the law in connection with its out-patient laboratory blood-work services performed under and funded through the Medicare and Medicaid programs.  Plaintiff opposed, reported and/or was about to report, and tried to stop Defendant's fraudulent and unlawful practices.   Without limitation:

a.     In or about May, 2013, Plaintiff overheard one of Defendant's lab employees saying that the lab was marking specimens for routine blood-work as "STAT" (*i.e.,* emergency) so that AMH could process the blood in-house at AMH, rather than send it to the external laboratory to which the blood specimen was required to be sent in order for the service to be covered under the Medicare Advantage and Medicaid programs.

i.     By way of explanation, IBC/Keystone has contracted with the federal and Pennsylvania governments to provide services pursuant to the Medicare Advantage (Part C) and Pennsylvania Medical Assistance (Medicaid) programs.

IBC/Keystone has in turn contracted with AMH to provide certain services under these programs.  Only eligible STAT laboratory services performed in an outpatient hospital setting that are performed in order to obtain immediate results to assist in determining an individual's course of treatment are covered and eligible for reimbursement.   A participating hospital laboratory in the Keystone network (such as AMH) may perform an eligible STAT blood-test provided that the ordering physician requests the STAT laboratory test via a written order.  AMH laboratory employees were altering the doctors' orders for routine blood tests by marking them as "STAT" so that the tests could be performed by the AMH laboratory and then billed by Defendant to IBC/Keystone as a covered service for reimbursement pursuant to the Medicare and Medicaid programs.

b.      Plaintiff confronted the laboratory employee and told her that it was improper to mark and process orders for the blood-work as "STAT" because the doctors' orders were for routine, not STAT, blood-work.

c.      Shortly thereafter, Plaintiff alerted then Lab Director Myrna Schwartz of the improper practice.

d.      In or about Summer, 2013, Defendant conducted a meeting attended by Plaintiff, lab management, and Human Resources Business Partner Latonia Ascuye, during which it was generally acknowledged that some things in the laboratory were not being done correctly and that changes would be made.

e.      In or about Fall, 2013, Plaintiff reported instances of improper practices and billing for laboratory blood-work in weekly meetings usually attended by lab management (including Rose Rivera (Supervisor of Lab Office), her supervisor, Nixsa Hernandez (Manager of Lab Access Center), her supervisor, Mary Ann Kirschner

(Director of Lab Operations), Kathryn Durr (Director of Mobile Outreach)), and Plaintiff's immediate supervisor, Janet Lentz, Patient Access Director (who usually attended every four weeks).

      f.    During the weekly meetings, Plaintiff repeatedly told the attendees that:

      i.    AMH was drawing, testing, and billing for blood work absent written doctors' orders.

      ii.    AMH was running blood tests they knew did not meet the requirements of medical necessity and without sending Advance Beneficiary Notice of Non-Coverage to Medicare/Medicaid patients, as required under Medicare and Medicaid.

      iii.    AMH laboratory employees were continuing to mark blood specimens as "STAT" in order to have the AMH laboratory process what was routine blood-work that should have been sent to an IBC/Keystone capitated laboratory, and then AMH was submitting claims for reimbursement for the false/fraudulently marked "STAT" blood-work to IBC/Keystone.

      g.    Lab Director Kirschner and Lab Manager Hernandez assured Plaintiff that the laboratory would address the issues of improper practices and billing that Plaintiff had raised and fix them after the start of the new year, 2014.

      h.    Lab management failed to correct Defendant's improper conduct.

      i.    In or about January, 2014, Plaintiff again heard the same laboratory employee she had previously confronted instructing another lab employee to mark returned orders for routine blood tests as "STAT" so that AMH could process and bill for the blood-work rather than send the blood to the external (non-AMH) lab as required.

      j.    In late January, 2014, Plaintiff sent an e-mail to Lab Director Kirschner, Lab Manager Hernandez, Lab Supervisor Ms. Rivera and Ms. Lentz with an

attached memorandum stating that the improper practices and billing for laboratory blood-work about which she previously had complained continued and requesting a meeting to address their correction.  Plaintiff met with laboratory leadership (including Lab Manager Carole Wolfert, and Lab Manager Kathy Perlmutter, Ms. Rivera, Ms. Hernandez, Ms. Kirschner) and was again given assurances that laboratory management would address and correct the issues.

      k.    In February, 2014, Plaintiff and Lab Supervisor Rivera looked for, but did not find, written documentation of doctors' orders for the home-draws for testing. Plaintiff again reported to Lab Director Kirschner what she believed was the improper practice and billing in connection with the home-draws because, as of that date, signed orders still had not been received.

      l.    Sometime in late February, 2014, Plaintiff learned from her staff that AMH laboratory staff continued to mark orders for routine blood tests as "STAT."

      m.    Later that same day in late February, 2014, Plaintiff sent an e-mail to her supervisor, Ms. Lentz, and AMH laboratory leadership (including Lab Director Kirschner, Lab Manager Hernandez, and Lab Supervisor Rivera) complaining again that the laboratory staff was falsely and intentionally marking orders for routine blood work as "STAT" so that AMH could process and bill Keystone for work that was not covered and eligible for reimbursement, that this was fraudulent, and that the problem had not been addressed and stopped.  Plaintiff complained that she had raised this issue repeatedly and the problem was still occurring.

      n.    Ms. Lentz forwarded Plaintiff's complaint to AMH's then Compliance Officer Paul Flanagan and requested a meeting to include, among others,

Lab Director Kirschner.  Ms. Lentz copied on her e-mail the original recipients of Plaintiff's e-mail (laboratory management, including Ms. Kirschner, Ms. Hernandez, Ms. Rivera).

          o.     A meeting with Compliance Officer Flanagan, to include Plaintiff, her supervisor Ms. Lentz and Lab Director Kirschner, was scheduled for March 6, 2014. At that time, Plaintiff was to report verbally to Compliance on Defendant's fraudulent and wrongful conduct in connection with the "STAT" orders.

34.     At all times, Plaintiff acted in good faith and had a reasonable basis to believe that Defendant was engaging in fraudulent and wrongful conduct.

35.     Defendant was aware that they were making home draws and testing blood without written doctors' orders and/or appropriate written confirmation of doctors' orders, yet continued to seek reimbursement for same.

36.     Defendant was aware that they were fabricating doctors' orders by marking as "STAT" routine blood specimens so that their ensuing claims for laboratory tests would be paid by IBC/Keystone (which is paid by the federal government and the Commonwealth of Pennsylvania to provide the services at issue to the Medicare/Medicaid eligible enrollees) when Defendant knew that the work as ordered was not covered and eligible for reimbursement.

37.     Defendant continuously and repeatedly violated the federal False Claims Act, 31 U.S.C. § 3729, by the acts set forth herein, including, without limitation: a) knowingly submitting for payment false and/or fraudulent claims to CMS and/or DPW for reimbursement under the federally funded Medicare and Medicaid programs for services for which Defendant knew it was not lawfully entitled to reimbursement; and b)

knowingly submitting for payment false and/or fraudulent claims to IBC/Keystone in its capacity as a government contractor to provide federally funded Medicare and Medicaid services for reimbursement for services for which Defendant knew it was not lawfully entitled.

38.     Plaintiff engaged in protected conduct under the FCA by, without limitation, opposing, reporting and trying to stop Defendant's violation of the FCA, 31 U.S.C. § 3729 as set forth herein.

39.     As set forth herein, Plaintiff was unwilling to participate in and objected to a course of action that Defendant was taking that was clearly unlawful under Pennsylvania law, as well.  Without limitation: Defendant was in connection with the blood home-draws rendering services without a practitioner's written order, and submitting claims for reimbursement of same to DPW under Pennsylvania's Medical Assistance program, both in violation of Pennsylvania's Fraud and Abuse and Control Act, 62 P.S. § 1407.  Further, in connection with the "STAT" blood work, Defendant knew IBC/Keystone First had an agreement with Pennsylvania's Department of Public Welfare ("DPW") to manage the purchase and provision of Physical Health Services. Defendant has a written Provider Agreement with and is credentialed by Keystone and participates in Keystone's Provider Network to serve eligible Medicaid members. Defendant was on an on-going and repeated basis providing services based on doctors' orders that were known to be altered and submitting claims for payment for "STAT" blood-work under Pennsylvania's Medical Assistance program that were false and/or fraudulent, medically unnecessary, and based on fabrications.  This conduct was also a felony under Pennsylvania's Fraud and Abuse and Control Act, 62 P.S. § 1407(a).  In

addition, to committing fraud against Pennsylvania's Medical Assistance program, Defendant knowingly and intentionally defrauded IBC/Keystone by submitting fabricated claims for reimbursement for which it knew it was not entitled. This conduct constituted illegal fraud under Pennsylvania's Insurance law, 18 Pa.C.S. § 4117.

40.     Defendant's actions were in violation of, *inter alia*:

      a.     the federal False Claims Act, 31 U.S.C. § 3729;

      b.     Medicare and Medicaid Anti-Fraud and Abuse Law, 42 U.S.C. § 1320a-7b(a);

      c.     federal Health Care Fraud law, 18 U.S.C. § 1347;

      d.     Pennsylvania's Fraud and Abuse Control Act, 62 P.S. § 1407; and

      e.     Pennsylvania's Insurance Fraud law, 18 Pa.C.S. § 4117.

41.     Plaintiff engaged in protected conduct under the Pa WBL when she reported in good faith to Defendant and/or was about to report to Defendant (*i.e.,* verbally to Compliance on March 6, 2014) Defendant's wrongdoing, including the actions which were in violation of federal and state laws and regulations, and/or waste.

### *Defendant retaliated against Plaintiff.*

42.     Immediately following Plaintiff's late February, 2014 e-mail and the scheduling of the meeting with Compliance, Defendant's laboratory management displayed hostility toward Plaintiff.

43.     Lab Manager Hernandez responded to Plaintiff's e-mail in a hostile manner.

44.     Director of Lab Operations Kirschner displayed extreme anger at Plaintiff. Ms. Kirschner confronted Plaintiff and asked her why she hadn't given her a chance to explain things before she reported the issue to Compliance.

45.     Plaintiff told her supervisor, Ms. Lentz, that Director of Lab Operations Kirschner appeared extremely angry at Plaintiff for having complained and escalated the issue to reach Compliance.

46.     On March 6, 2014, when Plaintiff reported to Compliance for the scheduled meeting and to report verbally on Defendant's wrongdoing, she was informed that the meeting was cancelled.

47.     Later that same morning of March 6, 2014, in a meeting with Human Resources Director Amy Taylor O'Brien, Diversity Director Sabrina Harris, and Ms. Lentz, Plaintiff was told that Defendant was suspending her employment without pay pending an investigation into alleged incidents that were never clearly spelled out to her. Defendant took Plaintiff's badge and keys.  As best Plaintiff could surmise, AMH was accusing that: 1) Plaintiff had violated HIPAA privacy laws by looking at employee medical records; and 2) Plaintiff in a conversation with Ms. Kirschner had used a racial slur.

48.     Plaintiff denied the accusations and complained that AMH was suspending Plaintiff because she had complained to Compliance.

49.     In response, HR Director O'Brien responded, "We knew you would say that."

50.     HR Director O'Brien gave no indication that AMH would investigate Plaintiff's complaint that the accusations against her were bogus and retaliatory for having complained.

51.     On March 17, 2014, HR Director O'Brien informed Plaintiff that the investigation had determined that:  1) Plaintiff did not access any employee medical records and had not violated HIPAA; and 2) the alleged use of a racial slur could not be conclusively confirmed.

52.     On March 20, 2014, in a meeting attended by Ms. Lentz, Executive Director Revenue Cycle Operations Kim Roberts and HR Director O'Brien, Defendant informed Plaintiff that she would not be returned to her position and told her words to the effect that she was "not what they wanted for a manager."

53.     In response to Plaintiff's request for specifics, HR Director O'Brien did not reference the two alleged incidents that were the purported basis for the suspension and subject of investigation, but instead showed Plaintiff an email from September, 2013.

54.     The September, 2013, e-mail was not at the time of its issuance or thereafter the source of any disciplinary investigation or action by Defendant, nor could it properly have been so based on its innocuous nature and content.

55.     Defendant asked Plaintiff to resign, which she did not do.

56.     On March 25, 2014, Defendant sent Plaintiff a letter stating that AMH had terminated her employment effective March 20, 2104, citing alleged violations of Performance Standards and Rules of Personal Conduct for conduct not becoming a manager.

57.     Defendant's asserted reasons for Plaintiff's suspension and for her termination are pretextual, and the real reason for same was because Plaintiff objected to, reported and/or was about to report, and tried to stop Defendant's fraudulent and unlawful practices.  Without limitation:

a.     AMH suspended Plaintiff on the very day she was to meet with Compliance to report verbally on the issues of wrongdoing raised in her late February, 2014 e-mail.

b.     Defendant ignored and did not investigate Plaintiff's complaint that she was being suspended for reasons that were bogus and retaliatory.

c.     Defendant's actions were contrary to their progressive discipline policy.  Prior to taking action against her, Defendant had never warned Plaintiff that she had done something wrong or that her job was in jeopardy.

d.     Laboratory management expressed anger and hostility at Plaintiff following Plaintiff's complaint of the laboratory fraud.

e.     Defendant failed to inform Plaintiff of the details of what she had supposedly done wrong and why she was being suspended, and never gave her a chance to address or explain what she was being accused of.

f.     One of the bases for the suspension was proven to be false and the other basis (from the same hostile source) was unsubstantiated.

g.     When the bases for the suspension proved unfounded, Defendant came up with an entirely different reason to terminate her.

h.     Defendant demonstrated hostility against Plaintiff by seizing upon accusations made against her by hostile employees responsible for the department in which the fraud was occurring and using it as an opportunity to look for anything against Plaintiff upon which they could possibly pin an action against her.

i.     The only specific instance of alleged wrongdoing to which Defendant pointed to explain their decision to terminate Plaintiff occurred more than six months before her termination and had never before been considered a problem.

       j.       Defendant's asserted reasons for termination as stated in its March 25, 2014 letter are squarely belied by Plaintiff's 26 year record of outstanding performance without a single incidence of improper conduct.

58.     As a direct and proximate result of Defendant's wrongful and retaliatory actions against Plaintiff as set forth herein, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

59.     Defendant's conduct, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

## COUNT I
### (Retaliation in violation of False Claims Act, 31 U.S.C. § 3730(h))

60.     Plaintiff incorporates herein by reference paragraphs 1 through 59 as if set forth herein in their entirety.

61.     Defendant was aware that Plaintiff engaged in protected activity under the FCA by, without limitation, opposing, reporting and trying to stop Defendant's violation of the FCA, 31 U.S.C. § 3729.

62.     Defendant discriminated against Plaintiff because she engaged in protected activity under the FCA.

63.     Defendant suspended Plaintiff because she engaged in protected activity under the FCA.

64.     Defendant terminated Plaintiff because she engaged in protected activity under the FCA.

65.     The actions of Defendant, through its agents, servants and employees, constitute a violation of 31 U.S.C. § 3730(h).

66.     As a direct and proximate result of Defendant's violation of the FCA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

67.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless this Court grants the relief requested herein.

68.     No previous application has been made for the relief requested herein.

## COUNT II
### (Retaliation in violation of Pennsylvania Whistleblower Law, 43 P.S. 1423(a))

69.     Plaintiff incorporates herein by reference paragraphs 1 through 68 as if set forth herein in their entirety.

70.     Defendant is a "public body" within the meaning of the Pa WBL.

71.     Defendant was aware that Plaintiff engaged in protected activity under the Pa WBL by, without limitation, making a report and/or being about to report Defendant's wrongdoing and/or waste.

72.     Defendant retaliated against Plaintiff because she engaged in protected activity under the Pa WBL.

73.     Defendant suspended Plaintiff pay because she engaged in protected activity under the Pa WBL.

74.     Defendant terminated Plaintiff because she engaged in protected activity under the Pa WBL.

75.     The actions of Defendant, through its agents, servants and employees, constitute a violation of Pa WBL, 43 P.S. 1423(a).

76.     As a direct and proximate result of Defendant's violation of the Pa WBL, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

77.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless this Court grants the relief requested herein.

78.     No previous application has been made for the relief requested herein.

## COUNT III
### (Wrongful Termination -- Violation of Pennsylvania Public Policy)

79.     Plaintiff incorporates herein by reference paragraphs 1 through 78 as if set forth herein in their entirety.

80.     The actions of Defendant, through its agents, servants and employees, in terminating Plaintiff's employment in retaliation for her unwillingness to participate in and opposition to Defendant's unlawful conduct constitute a violation of the clear mandate of the public policy of the Commonwealth of Pennsylvania that employers are prohibited from discharging an employee when such prohibition is prohibited by statute (here, the Pa WBL) and/or when the employee has refused to participate in and/or objected to an employer's course of action that is unlawful under Pennsylvania law (here, without limitation, Pennsylvania's Fraud and Abuse Control Act and its Insurance Law).

81.     The actions of Defendant, through its agents, servants and employees, constitute wrongful termination of employment actionable under Pennsylvania common law.

82.     As a direct and proximate result of Defendant's wrongful termination of Plaintiff's employment, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

83.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless this Court grants the relief requested herein.

84.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff:

a.     declaring the acts and practices complained of herein to be in violation of the FCA;

b.     declaring the acts and practices complained of herein to be in violation of the Pa WBL;

c.     declaring the acts and practices complained of herein to be in violation of Pennsylvania's public policy and thus actionable under Pennsylvania common law;

d.     enjoining and permanently restraining the violations alleged herein;

e.      entering judgment against the Defendant and in favor of Plaintiff in an amount to be determined;

f.      awarding all relief necessary to make Plaintiff whole;

g.      reinstating Plaintiff with the same seniority status she held prior to her retaliatory termination and with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to her retaliatory suspension and termination;

h.      awarding to Plaintiff two times the amount of her back pay;

i.      awarding to Plaintiff front pay, if appropriate;

j.      awarding compensatory damages to make Plaintiff whole for all pecuniary losses, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

k.      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

l.      awarding punitive damages to Plaintiff;

m.      awarding all special damages to Plaintiff;

n.      awarding all actual damages to Plaintiff;

o.      awarding to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

p.      awarding Plaintiff such other damages as are appropriate under the FCA, Pa WBL and Pennsylvania common law; and

q.      granting such other and further relief as this Court may deem just,

proper, or equitable including other equitable and injunctive relief providing restitution

for past violations and preventing future violations.


Dated:  August 11, 2014                              **CONSOLE LAW OFFICES LLC**

                                            BY: _____
                                                Stephen G. Console (36656)
                                                Laura C. Mattiacci (55799)
                                                Susan M. Saint-Antoine (89643)
                                                1525 Locust St., 9th Floor
                                                Philadelphia, PA  19102
                                                (215) 545-7676
                                                (215) 545-8211 (fax)

                                                Attorneys for Plaintiff,
                                                Joanne Cleighton

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
JOANNE CLEIGHTON

**DEFENDANTS**
ABINGTON MEMORIAL HOSPITAL

**(b)** County of Residence of First Listed Plaintiff   MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
LAURA MATTIACCI, ESQ.      215-545-7676
CONSOLE LAW OFFICES LLC
1525 LOCUST ST., 9TH FL., PHILA., PA 19102

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 3730(h) of the False Claims Act, 31 U.S.C. Sec. 3729. et seq.
Brief description of cause: Plaintiff alleges, inter alia, retaliatory suspension and termination of employment in violation of the False Claims Act.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
08/11/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Roslyn, Pa_

Address of Defendant: _1200 Old York Road, Abington, Pa_

Place of Accident, Incident or Transaction: _Abington, Pa_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☐

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights (retaliatory suspension and termination of employment under 31 U.S.C. 3730(h))
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Laura C. Mattiacci_, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: _08/11/2014_     _____     _89643_

Attorney-at-Law     Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _08/11/2014_     _____     _89643_

Attorney-at-Law     Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JOANNE CLEIGHTON | : | CIVIL ACTION |
| v. | : | |
| ABINGTON MEMORIAL HOSPITAL | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (×)

| | | |
|---|---|---|
| 08/11/2014 | LAURA C. MATTIACCI | PLAINTIFF, JOANNE CLEIGHTON |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2854 | mattiacci@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02